THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| AJAX GAMING VENTURES, LLC and THE TOWN OF JOHNSTON, Plaintiffs | : | |
| v. | : | C.A. No. 06- |
| MATTHEW BROWN, in his capacity as SECRETARY OF STATE for the STATE OF RHODE ISLAND, Defendant | : | CA 06 336 |

# VERIFIED COMPLAINT

## Preliminary Statement

This is an action seeking declaratory and injunctive relief to prevent the Secretary of State of the State of Rhode Island from placing on the ballot for the November 2006 General Election a proposed amendment to the Rhode Island Constitution that violates various provisions of the federal constitution, including but not limited to the Equal Protection Clause of the Fourteenth Amendment and the fundamental right to participate in the political process guaranteed by the First Amendment.

## Parties and Jurisdiction

1. Plaintiff, Ajax Gaming Ventures, LLC ("Ajax") is a Delaware limited liability company with a principal place of business situated in Rhode Island. At all times relevant hereto, Ajax, along with its business partners, TER Ocean State Development Co., LLC., a subsidiary of Trump Entertainment Resorts Holdings, LP ("Trump"), and Ocean State Gaming Ventures, LLC, has sought to compete for the right to operate a private casino in Rhode Island.

2. Plaintiff, the Town of Johnston, is a municipal corporation organized and existing under the laws of the State of Rhode Island. At all times relevant hereto, the Town of Johnston

has sought to compete for the right to have a private casino located within its borders. In this regard, by agreement dated March 31, 2006, the Town of Johnston entered into a Letter of Intent ("LOI") with Ajax and Trump affiliate, Ocean State Gaming Ventures, LLC ("OSGV") which provides, *inter alia*, that the parties would deal exclusively with each other with regard to the location of a casino in Rhode Island.

3. Defendant Matthew Brown is the duly elected Secretary of State for the State of Rhode Island (the "Secretary of State"), and is charged with the duty under Rhode Island law to place properly certified questions on the ballot at the General Election.

4. This Court has jurisdiction over the parties, and the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, inasmuch as this action presents substantial questions of federal law. The Court also has jurisdiction to render a declaratory judgment pursuant to 28 U.S.C. § 2201. Venue is proper in this district.

**Statement of Material Facts**

*The Current Status of Gaming in Rhode Island*

5. In 1973, the people of Rhode Island amended the State Constitution by enacting Article VI, § 15, which provides that all "lotteries shall be prohibited in the state except lotteries operated by the state and except those previously permitted by the general assembly prior to the adoption of this section, and shall be subject to the proscription and regulation of the general assembly."

6. As of the date hereof, Rhode Island's General Assembly has never authorized a casino to be operated by the State pursuant to Article VI, § 15 of the State Constitution.

7. In 1994, the people of Rhode Island approved a further amendment to the State Constitution, Article VI, § 22, which provides that "no act expanding the types of gambling

which are permitted within the state or within any city or town therein or expanding the municipalities in which a particular form of gambling is authorized shall take effect until it has been approved by the majority of those electors voting in a statewide referendum and by the majority of those electors voting in a referendum in the municipality in which the proposed gambling would be allowed."

8. With the foregoing constitutional provisions as a background, in 2004, the General Assembly (over the Governor's veto) enacted chapter 9.1 of Title 41 of the Rhode Island General Laws, entitled "The Rhode Island Gaming Control and Revenue Act" (the "Casino Act"), which provided comprehensive guidelines for a casino operation.

9. The Casino Act also called for a statewide referendum posing the question whether the voters should approve a "casino in the Town of West Warwick operated by an affiliate of Harrah's Entertainment in association with the Narragansett Tribe" (sometimes hereinafter referred to as the "Tribe"). R.I.G.L. § 41-9.1-9.

10. Prior to the statewide referendum called for in the Casino Act, the Governor of Rhode Island requested an advisory opinion from the Supreme Court of Rhode Island as to whether the Casino Act and the corresponding referendum question violated Article VI, § 15 of the state constitution by proposing to establish a lottery not operated by the State.

11. In response, the Supreme Court published an advisory opinion ruling that the proposed casino was violative of the state constitution, inasmuch as (i) the proposed casino constituted a "lottery;" and (2) the proposed casino would not be operated by the State. In so ruling, the Supreme Court also invalidated the proposed referendum question. *In re Advisory Opinion to the Governor (Casino I)*, 856 A.2d 320 (R.I. 2004).

12. In *Casino I*, the Supreme Court also ruled that the General Assembly could not expand permissible forms of gambling to include a casino operated by the state unless such proposed casino had received both statewide voter approval and approval of the voters in the municipality where the proposed casino was to be located. 856 A.2d at 333.

13. The following year, in 2005, a bill was introduced in the Rhode Island House of Representatives (the "House") to amend the Casino Act proposing again to allow a casino in West Warwick to be operated under a contract with the State by the Narragansett Indian Tribe and "its chosen partner" (the "2005 Casino Bill").

14. While the bill was pending before the House Finance Committee, the House requested an advisory opinion from the Supreme Court of Rhode Island inquiring whether the 2005 Casino Bill would comply with the state constitutional requirement that lotteries be operated by the State.

15. In response, the Supreme Court rendered an advisory opinion ruling that the casino operation proposed in the 2005 Casino Bill would constitute a privately operated casino, not a state operated lottery, and would therefore not comply with Article VI, § 15 of the state constitution. *In re Advisory Opinion to the House of Representatives (Casino II)*, 885 A.2d 698 (R.I. 2005).

*2006 Proposed Constitutional Amendment*

16. Article XIV, § 1 of the Rhode Island Constitution establishes a procedure for amending the State Constitution. It prescribes that the General Assembly may, by a roll call vote of the majority of elected members of each house, propose amendments to the constitution. Thereafter, the proposed amendment shall be submitted to the voters of the State of Rhode Island

at the next general election, and if approved by a majority of said voters, it shall become a part of the constitution.

17. Having failed twice in their efforts to establish a casino operation in West Warwick, the Narragansett Indian Tribe/Harrah's contingent embarked on efforts in 2006 to amend the Rhode Island Constitution to permit such an operation.

18. Accordingly, in or about March 2006, proponents of a West Warwick casino to be operated by the Narragansett Indian Tribe/Harrah's contingent introduced in the House Bill No. H 7935 (the "West Warwick Resolution").

19. The West Warwick Resolution proposed a single resort casino in the State of Rhode Island, to be located in the Town of West Warwick, and to be privately owned and operated by an entity established by the Narragansett Indian Tribe and "its chosen partner." Although the Tribe has steadfastly refused to disclose the terms of its agreement with its "chosen partner," including the identity thereof, it is widely and publicly known and acknowledged that said chosen partner is Harrah's Entertainment, which was expressly identified in the 2004 Casino Act.

20. The West Warwick Resolution passed the House on May 25, 2006, and passed the Senate on June 1, 2006, thereby constituting a Joint Resolution of the General Assembly.

21. Said Resolution received approval despite the fact that the Tribe and West Warwick produced only sparse evidence concerning the details of the planned casino operation. The West Warwick Resolution passed despite efforts by Ajax and Trump to offer testimony that the State would derive additional tax revenue (at the tax rate proposed by West Warwick) of approximately $188 Million if the casino were to be located in Johnston. Significantly, in approving the West Warwick Resolution, the House refused to consider said Johnston evidence.

22. In considering the West Warwick Resolution, the General Assembly failed to require substantive evidence to establish that the Tribe/Harrah's entity was qualified to own/operate the casino, and that the awarding of a license to such entity would be in the best interests of the State. In so doing, the General Assembly appears to have abdicated its due diligence obligations to the people of the State, and instead struck a political deal at the expense of the taxpayers of Rhode Island as well as legitimate entities seeking to compete for the casino license.

23. The West Warwick Resolution, in its final form (H 7935 Substitute A) is attached hereto as Exhibit A.

24. The West Warwick Resolution provides for a statewide referendum on the question of whether the Rhode Island Constitution should be amended to permit a single casino in West Warwick to be operated by the Narragansett Indian Tribe and its chosen partner. The referendum question is scheduled to be presented to the electorate at the General Election on or about November 7, 2006.

25. In accordance with the provisions of Rhode Island law governing the conduct of elections, the Secretary of State is charged with the duty of preparing and furnishing ballots to be used at the General Election.

26. Specifically, with respect to questions to be submitted to the voters, said questions must be certified to the Secretary of State not later than ninety (90) days prior to the election, or not later than August 9, 2006. *See* R.I. Gen. Laws § 17-19-7.

*Ajax and Johnston Efforts to Establish a Casino*

27. Ajax was formed as a Delaware limited liability company in or about November 2005, solely and specifically for the purpose of pursuing the development of a destination resort casino in the Town of Johnston.

28. Ajax is the holder of an exclusive option to purchase approximately 110 acres of real estate situated in Johnston where its proposed casino would be located.

29. At a meeting on or about May 17, 2006, the Johnston Town Council adopted a resolution (the "Johnston Casino Vote Resolution") requesting that the General Assembly enact an act allowing the voters of the Town of Johnston, at the November 7, 2006 General Election, to vote on the question whether a destination resort casino shall be allowed in Johnston. Pursuant to the terms of the Johnston Casino Vote Resolution, and in accordance with the provisions of Rhode Island General Laws § 41-9-4, the Johnston Town Clerk delivered a copy of said resolution to the General Assembly.

30. On or about May 23, 2006, proponents of a destination resort casino in the Town of Johnston introduced House Bill No. 8132 (the "Johnston Casino Bill"), which proposed an amendment to the Rhode Island State Constitution authorizing a single destination resort casino in the State, to be privately owned and privately operated by an entity to be selected by a competitive process; to be regulated and taxed by the State; and to be located in a host municipality whose voters, at the November 2006 General Election, had voted to approve such casino.

31. A true copy of the Johnston Casino Bill is attached hereto as Exhibit B.

32. The House subsequently scheduled the Johnston Casino Bill for consideration, but on May 31, 2006, tabled said bill for further study.

33. The 2006 Legislative Session concluded on or about June 30, 2006 without approval of the Johnston Casino Bill. Consequently, only the West Warwick Resolution is presently scheduled to be presented to the voters of the State of Rhode Island at the November 2006 General Election.

34. Both Ajax and the Town of Johnston have expended considerable time, funds, and other resources pursuing the authorization and development of a resort casino in the Town of Johnston, and both parties continue to be intensely interested in pursuing said development opportunities.

## Claims for Relief

### COUNT I
### (Declaratory Judgment and Injunctive Relief for Ajax – Fourteenth Amendment Violation)

35. Ajax hereby restates and re-alleges herein the allegations contained in Paragraphs 1 through 34 of this Verified Complaint.

36. The West Warwick Resolution is unconstitutional and violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution with respect to its pre-selection of an owner/operator for the proposed casino.

37. Specifically, with respect to Ajax, The West Warwick Resolution denies equal protection and treats one person differently than it treats other, similarly-situated persons, inasmuch as it selects, to the exclusion of all others, an entity established by the "Narragansett Indian Tribe and its chosen partner" as the sole and exclusive owner and operator of the proposed casino. Said proposed amendment therefore confers in the State Constitution a special and valuable right and benefit – a monopoly to own and operate a casino – on a single entity, and precludes all other potentially interested parties, including Ajax and Trump, from ever seeking consideration for such valuable right and benefit.

*Selection of the Tribe as the Owner/Operator of the Proposed Casino*

38. Moreover, by proposing to confer solely on the Narragansett Indian Tribe the right to establish the entity to own and operate the proposed casino, the General Assembly has engaged in a suspect classification.

39. In this regard, Article I, § 8, clause 3 of the federal constitution provides exclusively to Congress the authority to "regulate commerce with the Indian Tribes." Federal law therefore preempts the rights of states to regulate or legislate with respect to Indian Tribes, unless such state law (i) applies to a federally recognized tribe; (ii) applies to the use of tribal lands; and (iii) is pursuant to federal legislation.

40. Because the right conferred upon the Tribe by the West Warwick Resolution neither applies to the use of tribal lands nor is pursuant to federal legislation, the selection of the Tribe constitutes a preference for a particular racial group (a suspect class), and is subject to strict scrutiny.

41. The State of Rhode Island has no compelling state interest that justifies the proposed exclusive selection in the State Constitution of the Tribe as the holder of the right to establish the entity to own and operate the proposed casino.

42. Indeed, because the Tribe has no federally protected or established right to operate a casino in Rhode Island, it stands in no better position than any other entity, including Ajax, with respect to awarding the right to own and operate a casino.

43. Accordingly, the proposed award of the right to own and operate a casino to an entity established by the Tribe is purely arbitrary and not rationally related to a legitimate state objective.

*Selection of Harrah's as the Owner/Operator of the Proposed Casino*

44. Furthermore, with respect to the Tribe's "chosen partner," which is publicly and widely-known to be Harrah's Entertainment, the West Warwick Resolution confers a special and valuable right on a single private entity to the exclusion of all others, treats one person differently than it treats other, similarly-situated persons, and therefore denies equal protection.

45. The State has no legitimate interest rationally related to such special treatment that justifies its pre-selection of Harrah's Entertainment. To the contrary, in view of evidence that a proposed OSGV/Johnston casino would have generated substantially greater revenue for the State, the proposed amendment's selection of Harrah's Entertainment is purely arbitrary, and is therefore constitutionally infirm. Moreover, the proposed amendment contains no provision for ensuring that the Tribe/Harrah's entity is qualified to hold the casino license.

46. Consequently, the pre-selection of Harrah's Entertainment smacks of being a back room, political sweetheart deal that cannot withstand any form of federal constitutional scrutiny.

*Injury Sustained by Ajax*

47. There is a present and actual case or controversy, and Ajax has sustained a substantial injury as a result of the General Assembly's adoption of the joint resolution authorizing a statewide vote on the West Warwick Resolution.

48. Specifically, in the event that the voters of Rhode Island are allowed to vote on the unconstitutional West Warwick Resolution, Ajax will sustain irreparable injury, *inter alia*, (i) because it has expended considerable time, funds, and resources in seeking the opportunity for consideration as a qualified owner/operator of a resort casino in Rhode Island, which opportunity will be precluded for all time by the West Warwick Resolution (ii) because it has secured an option to purchase real estate for the location of a casino, which option will become worthless;

(iii) because the voters' consideration of a proposed unconstitutional amendment will foreclose approval of a properly formulated proposed casino amendment; and (iv) because the voters' consideration of a constitutionally flawed proposed amendment will inevitably and impermissibly taint and negatively influence any future efforts to establish a constitutional casino in Rhode Island.

*Declaratory Judgment*

49. In view of the foregoing, this Court should exercise its authority under 28 U.S.C. § 2201 and issue a judgment declaring that the West Warwick Resolution violates the federal constitution.

50. Moreover, the issues raised in this Complaint are of great public and constitutional importance, inasmuch as the West Warwick Resolution requires placing a referendum question on the statewide ballot.

51. If, as alleged herein, the referendum question and proposed amendment are unconstitutional, then members of the public will waste much money, time, effort, and energy to familiarize themselves with the controversial issues that the proposed West Warwick casino has raised. Further, the issues surrounding a statewide vote on a casino are especially important because, as the West Warwick Resolution acknowledges, "it is in fairness to the citizens of this state that the constitutionality and authorization of a resort casino . . . be decided by the vote of the citizens . . . ." Accordingly, the citizens of Rhode Island should not be required to vote on a proposed unconstitutional amendment to the State Constitution.

*Injunctive Relief*

52. The Secretary of State must submit for preparation and publication on or before August 9, 2006 the ballot question(s) proposed by the West Warwick Resolution. R.I. Gen. Laws § 17-19-7.

53. Unless this Court enjoins the Secretary of State from submitting said ballot question(s), Ajax will sustain irreparable injury as alleged herein.

54. Ajax has no adequate remedy at law.

WHEREFORE, Ajax demands that the Court grant the following relief:

A. Enter Judgment for Ajax and against the Secretary of State, declaring that the West Warwick Resolution violates the Equal Protection Clause of the Fourteenth Amendment to the federal constitution in that (i) said proposed amendment's pre-selection of the Tribe as the entity entitled to establish the owner/operator of the proposed casino is not justified by a compelling state interest, is purely arbitrary, and is not rationally related to any legitimate state objective; and (ii) said proposed amendment's pre-selection of Harrah's as the chosen partner of the Tribe is likewise purely arbitrary, and is not rationally related to any legitimate state objective;

B. Issue a temporary order restraining the Defendant, Secretary of State from taking any action to place the question whether to approve the West Warwick Resolution on any statewide or local ballot for the November 2006 General Election;

C. After hearing, grant a preliminary and permanent injunction enjoining the Defendant, Secretary of State, from taking any action to place the question whether to approve the West Warwick Resolution on any statewide or local ballot for the November 2006 General Election;

D. Award Ajax its costs and reasonable attorney's fees; and

E. Grant such other and further relief as the Court deems fair and just.

**COUNT II**
**(Declaratory Judgment and Injunctive Relief for Johnston – Fourteenth Amendment Violation)**

55. The Town of Johnston hereby restates and re-alleges herein the allegations contained in Paragraphs 1 through 54 of this Verified Complaint.

56. The West Warwick Resolution is unconstitutional and violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution with respect to its selection of the location for the proposed casino.

*Pre-selection of West Warwick as the Location for the Proposed Casino*

57. By selecting the Town of West Warwick, to the exclusion of all other municipalities, including the Town of Johnston, as the sole and exclusive location for the proposed casino, the West Warwick Resolution engages in discriminatory treatment and violates the Equal Protection Clause.

58. The West Warwick Resolution precludes all other municipalities in the State of Rhode Island from seeking to host a resort casino, a valuable right which would produce substantial tax revenue for the host community.

59. The West Warwick Resolution's selection of West Warwick as the location for the proposed casino is arbitrary and is not rationally related to any legitimate state objective, and cannot, therefore, withstand federal constitutional scrutiny.

*Injury Sustained by the Town*

60. There is a present and actual case or controversy, and the Town of Johnston has sustained a substantial injury as a result of the General Assembly's adoption of the joint resolution authorizing a statewide vote on the West Warwick Resolution.

61. Specifically, the Town of Johnston has sustained a substantial injury in that it (i) has expended substantial time, funds and resources to negotiate and enter into a casino development agreement; (ii) has adopted a town council resolution requesting the General Assembly to authorize the voters of the Town of Johnston to vote on whether to approve the establishment of a resort casino in the Town; and (iii) will be precluded for all time by the West Warwick Resolution from being considered as a possible location for a resort casino in Rhode Island.

*Declaratory Judgment*

62. In view of the foregoing, this Court should exercise its authority under 28 U.S.C. § 2201 and issue a judgment declaring that the West Warwick Resolution violates the federal constitution.

63. Moreover, the issues raised in this Complaint are of great public and constitutional importance, inasmuch as the West Warwick Resolution requires placing a referendum question on the statewide ballot.

64. If, as alleged herein, the referendum question and proposed amendment are unconstitutional, then members of the public will waste much money, time, effort, and energy to familiarize themselves with the controversial issues that the proposed West Warwick casino has raised. Further, the issues surrounding a statewide vote on a casino are especially important because, as the West Warwick Resolution acknowledges, "it is in fairness to the citizens of this

state that the constitutionality and authorization of a resort casino . . . be decided by the vote of the citizens . . . ." Accordingly, the citizens of Rhode Island deserve the opportunity to vote on a constitutionally sound amendment to their State Constitution.

*Injunctive Relief*

65. The Secretary of State must submit for preparation and publication on or before August 9, 2006 the ballot question(s) proposed by the West Warwick Resolution. R.I. Gen. Laws § 17-19-7.

66. Unless this Court enjoins the Secretary of State from submitting said ballot question(s), the Town of Johnston will sustain irreparable injury as alleged herein.

67. The Town of Johnston has no adequate remedy at law.

WHEREFORE, the Town demands that the Court grant the following relief:

A. Enter Judgment for the Town of Johnston and against the Defendant, Secretary of State, declaring that the West Warwick Resolution violates the Equal Protection Clause of the Fourteenth Amendment to the federal constitution in that the West Warwick Resolution's selection of West Warwick as the location for the proposed casino is arbitrary and is not rationally related to any legitimate state objective;

B. Issue a temporary order restraining the Defendant, Secretary of State, from taking any action to place the question whether to approve the West Warwick Resolution on any statewide or local ballot for the November 2006 General Election;

C. After hearing, grant a preliminary and permanent injunction enjoining the Defendant, Secretary of State, from taking any action to place the question whether to approve the West Warwick Resolution on any statewide or local ballot for the November 2006 General Election;

D. Award the Town of Johnston its costs and reasonable attorney's fees; and

E. Grant such other and further relief as the Court deems fair and just.

## COUNT III
**(Declaratory Judgment and Injunctive Relief for Ajax – First Amendment Violation)**

68. Ajax hereby restates and re-alleges herein the allegations contained in Paragraphs 1 through 67 of this Verified Complaint.

69. The West Warwick Resolution is unconstitutional and violates the First Amendment to the United States Constitution with respect to its pre-selection of the owner/operator of the proposed casino.

70. Specifically, the selection of the appropriate owner/operator of a proposed casino in Rhode Island is a political and regulatory process that should be established and overseen by the General Assembly.

71. The West Warwick Resolution – by pre-selecting the owner/operator of the proposed casino without regard to fitness, qualification, or the best interests of the taxpayers of the State – improperly precludes all persons or entities other than the Tribe/Harrah's **for all time** from participating in any political activity or process to petition or solicit the General Assembly for the right to own/operate a casino in the State of Rhode Island. Instead, any right to seek to own/operate a casino could not be effectuated without a state constitutional amendment.

72. Such denial of the fundamental right to participate equally in the political process denies Ajax the First Amendment right of the people "to petition the Government for a redress of grievances."

73. As a result, Ajax will sustain a substantial injury as previously alleged herein.

74. For the reasons set forth herein, the Court should issue a declaratory judgment and grant injunctive relief with respect to the West Warwick Resolution's violation of the First Amendment.

75. In the absence of such relief, Ajax will be irreparably harmed and will have no adequate remedy at law.

WHEREFORE, Ajax demands that the Court grant the following relief:

A. Enter Judgment for Ajax and against the Defendant, Secretary of State, declaring that the West Warwick Resolution violates the First Amendment to the federal constitution in that it denies Ajax the fundamental right to participate in the political process inherently forming a part of the determination as to the appropriate owner/operator of a proposed casino in Rhode Island;

B. Issue a temporary order restraining the Defendant, Secretary of State, from taking any action to place the question whether to approve the West Warwick Resolution on any statewide or local ballot for the November 2006 General Election;

C. After hearing, grant a preliminary and permanent injunction enjoining the Defendant, Secretary of State, from taking any action to place the question whether to approve the West Warwick Resolution on any statewide or local ballot for the November 2006 General Election;

D. Award Ajax its costs and reasonable attorney's fees; and

E. Grant such other and further relief as the Court deems fair and just.

AJAX GAMING VENTURES, LLC and

THE TOWN OF JOHNSTON,

By their Attorneys,

SHECHTMAN HALPERIN SAVAGE, LLP

Preston W. Halperin, R.I. Bar No. 5555
Douglas A. Giron, R.I. Bar No. 2943
1080 Main Street
Pawtucket, RI 02860
(401) 272-1400
(401) 272-1403 (fax)

Dated: July 21, 2006

# VERIFICATION BY AJAX GAMING VENTURES, LLC

David H. Nunes, being duly sworn, upon oath hereby deposes and states as follows:

1. I am the Manager of Plaintiff Ajax in the above-captioned action, and I have knowledge of the matters asserted in the foregoing verified complaint.

2. I have reviewed the foregoing allegations of the verified complaint, and I affirm that such allegations are true based upon my knowledge and belief.

3. For such allegations as are set forth upon information and belief, I believe such allegations to be true.

David H. Nunes, Manager

Sworn and subscribed to before me on this 19th day of July, 2006.

Notary Public

My Commission Expires: 12/03/09

## VERIFICATION BY THE TOWN OF JOHNSTON

William R. Macera, being duly sworn, upon oath hereby deposes and states as follows:

1. I am the Mayor of Plaintiff Town of Johnston in the above-captioned action, and I have knowledge of the matters asserted in the foregoing verified complaint.
2. I have reviewed the foregoing allegations of the verified complaint, and I affirm that such allegations are true based upon my knowledge and belief.
3. For such allegations as are set forth upon information and belief, I believe such allegations to be true.

William R. Macera
William R. Macera, Mayor

Sworn and subscribed to before me on this 19th day of July, 2006.

Lori Ann Ricci
Notary Public

My Commission Expires: 4/19/2010