THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| AJAX GAMING VENTURES, LLC and THE TOWN OF JOHNSTON, Plaintiffs | : | |
| v. | : | C.A. No. 06-336 S |
| MATTHEW BROWN, in his capacity as SECRETARY OF STATE for the STATE OF RHODE ISLAND, THE NARRAGANSETT INDIAN TRIBE, and HARRAH'S WEST WARWICK INVESTMENT COMPANY, LLC, Defendants | : | |

**AFFIDAVIT OF DAVID H. NUNES**

David H. Nunes, being duly sworn, upon oath hereby deposes and states as follows:

1. I am the sole member of Ajax Gaming Ventures, LLC ("Ajax"), a Plaintiff in the above matter. Ajax was formed solely and specifically for the purpose of pursuing the development of a destination resort casino in the Town of Johnston.

2. In 2003, long before I formed Ajax, the Rhode Island House of Representatives convened a Special Commission to Study Gaming, of which Representative Gordon Fox was one of the Chairpersons.

3. In 2003, Harrah's and the Tribe had already begun efforts for the establishment of a resort casino in West Warwick.

4. At that time, a staff person called me on behalf of Representative Fox and asked me to supply the names of individuals who would testify before the House Special Commission on the issue whether a competitive selection process for a potential owner/operator of a proposed casino would be beneficial to the State. Father Richard McGowan of the Carroll School of Management at Boston College and Sheldon Adelson, Chairman of Las Vegas Sands Inc. both gave testimony at my request.

5. Representative Fox assured me that if I brought a competitive casino proposal to the Legislature, such proposal would receive a fair hearing. Representative Fox also suggested that I explore the Town of Johnston as a possible location. I had numerous meetings with Representative Fox over the course of a two year period.

6. During the following two years, I investigated suitable land for sale in Johnston. Eventually, I found potentially suitable land, and on January 23, 2006, Ajax entered into a purchase and sale agreement to purchase approximately 110 acres (the "Johnston Purchase Agreement").

7. In connection with said Agreement, Ajax paid a deposit of $150,000.00 (the "Deposit").

8. Per the terms of the Johnston Purchase Agreement, Ajax had the right, for a period of six months following the signing date (the "Permit Approval Period"), to obtain necessary permits and approvals for its planned casino development, and if not obtained, to extend said Period for two additional three-month periods upon notice to the seller. At the expiration of the Permit Approval Period, the Deposit becomes non-refundable.

9. Because there is currently no legislative prospect for a casino in Johnston, Ajax cannot obtain the necessary permits and approvals under the Johnston Purchase Agreement. Although Ajax has thus far extended the Permit Approval Period, it will be forced to relinquish its rights under the Johnston Purchase Agreement and withdraw from that Agreement, if the Court allows the scheduled vote on the West Warwick Resolution to proceed.

10. In addition to securing rights in land for a casino, Ajax has spent considerable time and effort to attract investors for its proposed casino project. Specifically, Ajax has entered into a Memorandum of Terms for a joint venture with Medalist, LLC ("Medalist"), a Delaware limited liability company, pursuant to which Medalist has committed funds to the proposed

Johnston casino project, and will commit to substantial additional funding, in its discretion, in the event that the project moves forward.

11. Unless this Court enjoins the proposed referendum question on the West Warwick Resolution, Medalist will not be willing to commit any further funds to the project, and Ajax will lose its investors.

12. In turn, the loss of investors will force Ajax to withdraw from the Johnston Purchase Agreement.

13. Consequently, I believe that unless the Court enjoins the proposed referendum question on the West Warwick Resolution, Ajax's efforts to establish a casino resort in Johnston will be irreparably harmed, regardless of the outcome of the proposed vote in November 2006.

14. Additionally, Ajax's relationship with Trump will be further damaged in the absence of an injunction enjoining the proposed referendum question on the West Warwick Resolution.

15. Following several months of negotiations, and after discussions with House leaders in which they encouraged pursuit of a Johnston casino, Ajax and Trump entered into a joint venture agreement in or about February 2006 and formed Ocean State Gaming Ventures, LLC ("OSGV"). OSGV subsequently negotiated a letter of intent with the Town of Johnston which contained many essential terms for a casino development agreement between the parties. OSGV also drafted a proposed amendment to the State Constitution (the "Johnston Casino Bill") proposing a casino for which the location and operator would be determined by a competitive selection process.

16. The Ajax/Trump joint venture agreement lapsed due to the scuttling of the proposed Johnston Casino Bill. As a result, Ajax's efforts to maintain its contractual and advantageous relationship with Trump will be further jeopardized should the Court allow the

ballot question to proceed at the November election.

17. Based upon my experience as a proposed developer in the gaming industry, and based more particularly upon my involvement in the proposed Johnston project during the past 2-3 years, I believe that if the voters are allowed to vote on the West Warwick Resolution, even if that referendum is defeated or if a court later declares the proposed casino amendment to be unconstitutional, they would react negatively in the future and would reject any casino gaming proposal (even if constitutional).

18. I further believe that the mere appearance on the statewide ballot of a question that proposes to grant gaming rights to the Narragansett Indians for a casino to be located in the Town of West Warwick will be perceived by the voters as an endorsement by the State Legislature of the Tribe and West Warwick; and that such an endorsement will give an unfair advantage to the Tribe and the Town in any future legislation or voter ballot question.

19. Accordingly, I believe that if the Court allows the West Warwick Resolution to be placed on the ballot, Ajax's ability to pursue a valid and constitutional casino in Johnston will sustain irreparable injury.

DAVID NUNES

Sworn and subscribed to before me in Providence, Rhode Island on this 28th day of July 2006.

Douglas A. Giron

Notary Public
My commission expires: 12/03/09

**CERTIFICATE OF SERVICE**

***I HEREBY CERTIFY*** that a true and correct copy of the foregoing Affidavit was served via first class mail, postage prepaid this 28th day of July, 2006 to the following counsel of record:

Richard R. Beretta, Esquire
Joseph Avanzato, Esquire
James A. Hall, Esquire
Adler Pollock & Sheehan, PC
One Citizens Plaza, 8th Floor
Providence, RI 02903

Jack Killoy, Esquire
74 Main Street
Wakefield, RI 02879

Lauren Jones, Esquire
72 South Main Street
Providence, RI 02903

Christopher E. Friel, Esquire
600 Tollgate Road
Warwick, RI 02886

Andrew M. Hodgkin, Esquire
Executive Counsel
Office of the Governor
State House, Room 115
Providence, RI 02903

Rebecca Partington, Esquire
Office of the Attorney General
150 South Main Street
Providence, RI 02903

Julie A. Zaccagnini