THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| AJAX GAMING VENTURES, LLC and THE TOWN OF JOHNSTON, Plaintiffs | : | |
| v. | : | C.A. No. 06-336 S |
| MATTHEW BROWN, in his capacity as SECRETARY OF STATE for the STATE OF RHODE ISLAND, THE NARRAGANSETT INDIAN TRIBE, and HARRAH'S WEST WARWICK INVESTMENT COMPANY, LLC, Defendants | : | |

**PLAINTIFFS' REPLY TO BRIEF OF TRIBE AND HARRAH'S**

Respectfully submitted,

AJAX GAMING VENTURES, LLC and
THE TOWN OF JOHNSTON,

By their Attorneys,

SHECHTMAN HALPERIN SAVAGE, LLP

/S/ *PRESTON W. HALPERIN, ESQUIRE*
/S/ *DOUGLAS A. GIRON, ESQUIRE*
Preston W. Halperin, R.I. Bar No. 5555
**phalperin@shslawri.com**
Douglas A. Giron, R.I. Bar No. 2943
**dgiron@shslawri.com**
1080 Main Street
Pawtucket, RI 02860
(401) 272-1400
(401) 272-1403 (fax)

Dated: August 4, 2006

The Tribe and Harrah's erroneously argue in their brief that a state has the same "trust relationship" with Indian tribes that the federal government has, thereby purportedly analogizing state preferences in favor of Indians to Congressional preferences which are "political" rather than "racial," and thereby assertedly subjecting such preferences to rational means rather than strict scrutiny. (*See* Tribe & Harrah's Brief at 14-22). Consequently, the intervenors contend that the selection of the Tribe (along with Harrah's) to establish, own, and operate the casino is appropriate to foster tribal economic development and ameliorate wrongs to which the State has subjected tribal members in the past. (*Id.* at 17-20). To support such flawed "state-tribe trust relationship" hypothesis, the Tribe and Harrah's are able to offer only two cases that (i) approve layoff protection for Native American teachers, *Kreuth v. Independent School Dist. No. 38*, 496 N.W.2d 829, 836 (Minn. Ct. App. 1993), and (ii) provide low-cost urban housing for American Indians, *St. Paul Intertribal Housing Bd. v. Reynolds*, 564 F. Supp. 1408, 1413 (D. Minn. 1983). However, because such cases are distinguishable on their facts,[1] and because the intervenors' state-tribe trust relationship analysis is plainly contrary to the weight of authority, this Court should conclude that such cases have no controlling force here.

State preferences for federally recognized Native Americans which do not involve tribal lands, customs, and culture, and which do not respond to, implement, or further a federal statutory policy, are plainly racial and not political. *See, e.g., Tafoya v. City of Albuquerque*, 751 F. Supp. 1527, 1529-31 (D.N.M. 1990; *Malabed v. North Slope Borough*, 70 P.3d 416, 423-27 (Alaska 2003). *But cf. Artichoke Joe's California Grand Casino v. Norton*, 353 F.3d 712, 733-

---

1 In *Kreuth*, significantly, the state was attempting to address a need for more Native American teachers in schools attended by Indian children. In *Intertribal Housing*, in contrast the state was furthering a federal interest in providing low-cost housing for Indians in urban areas. The specific asserted state interests in such cases are clearly different than a generalized desire to provide economic opportunities for Indians by granting them a monopoly on casino gambling. Accordingly, it is questionable whether *Kreuth* and *Intertribal Housing* stand for anything other than the proposition that where a state has laudable interests in addressing educational or housing needs, it can enact legislation that benefits Indians. Clearly, such cases do not support the conclusion that the State of Rhode Island is free to confer valuable casino rights on the Tribe to promote their economic growth.

34 (9th Cir. 2003)(where state law extends federal legislation into Indian country, courts review such state laws as if federal). *See generally* L. Baca, *American Indians, the Racial Surprise in the 1964 Civil Rights Act: They May, More Correctly, Perhaps, Be Denominated a Political Group*, 48 Howard L.J. 971, 982-87 (2005). Accordingly such preferences are subject to strict scrutiny. Moreover, because states do not enjoy the same federal constitutionally mandated unique relationship with tribes, they do not have a compelling interest in righting past atrocities against Native Americans or in furthering their political and economic self-sufficiency. *See Tafoya*, 751 F. Supp. at 1531 (local legislation must articulate compelling local interest to justify preference for members of federally recognized tribes); *cf. Malabed*, 70 P.2d at 426-27 (preferring economic interests of one class over another is not proper municipal interest under Alaska constitution, regardless whether distinction is based on political status or race). Instead, to justify a legislative preference, a state must demonstrate that the preference is the least restrictive means necessary to remedy past deprivations which Native Americans have suffered with respect to the **subject matter of the legislation**. In the context of casino gambling, to establish that the State has a compelling interest in awarding the monopoly to the Tribe, there must be a particularized showing that the Tribe has been unfairly denied the right to operate a casino in the past, and that the monopoly constitutes the least restrictive method of remedying such wrong.[2] *Cf. Tafoya*, 751 F. Supp. at 1531 (applying such analysis to licensing preference). However, because all gaming in Rhode Island is illegal (except state operated "lotteries"), the Tribe has been treated the same as all other groups and entities. Consequently, there cannot possibly be any constitutional justification for the preference favoring the Tribe.

---

2 *Cf.* Joint Resolution, House Bill No. H 7935 Sub. A (purposes of West Warwick Resolution are (i) to "provide competition with resort casinos in nearby jurisdictions;" (ii) "create jobs and other economic benefits;" and (iii) provide relief from "the property-tax burden"). Plainly, none of the articulated purposes of the proposed amendment are to remedy past unfair denials of casino rights to the Tribe. Under the circumstances, the proposed monopoly could not possibly be justified by a compelling state interest, let alone satisfy the more deferential rational basis standard, inasmuch as the State has no articulated interest that would justify discriminating between the Tribe and non-Indians with respect to the rights to own and operate a casino.

**CERTIFICATE OF SERVICE**

*I HEREBY CERTIFY* that a true copy of the foregoing Reply Memorandum was served via electronic mail and/or regular first class mail postage pre-paid to the following Counsel of Record on August 4, 2006:

Richard R. Beretta, Esquire
Joseph Avanzato, Esquire
James A. Hall, Esquire
Adler Pollock & Sheehan, PC
One Citizens Plaza, 8th Floor
Providence, RI 02903
***javazato@apslaw.com***
***rberetta@apslaw.com***
***jhall@apslaw.com***

Jack Killoy, Esquire
74 Main Street
Wakefield, RI 02879
***j.killoy@verizon.net***

Lauren Jones, Esquire
Mark Labollita, Esquire
72 South Main Street
Providence, RI 02903
***ljones@appeallaw.com***
***mlabollita@appeallaw.com***

Andrew M. Hodgkin, Esquire
Executive Counsel
Office of the Governor
State House, Room 115
Providence, RI 02903
***ahodgkin@gov.state.ri.us***

Rebecca Partington, Esquire
Office of the Attorney General
150 South Main Street
Providence, RI 02903
***RPartington@riag.state.ri.us***

*/s/ Preston W. Halperin*
*/s/ Douglas A. Giron*