UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
_____
                               )
AJAX GAMING VENTURES, LLC      )
and THE TOWN OF JOHNSTON,      )
                               )
              Plaintiffs,      )
                               )
       v.                      )      C.A. No. 06-336 S
                               )
MATTHEW BROWN, in his          )
capacity as SECRETARY OF       )
STATE for the STATE OF RHODE   )
ISLAND, THE NARRAGANSETT       )
INDIAN TRIBE, and HARRAH'S     )
WEST WARWICK INVESTMENT        )
COMPANY, LLC,                  )
                               )
              Defendants.      )
_____
```

**MEMORANDUM AND ORDER**

WILLIAM E. SMITH, United States District Judge.

In this case, a disappointed casino developer ("Ajax") and its municipal partner (the Town of Johnston) seek the intervention of the federal court to prohibit a proposed constitutional amendment question from appearing on the November election ballot. Pursuant to their Verified Complaint, Plaintiffs seek an order enjoining Defendant Matthew Brown, in his capacity as Secretary of State for the State of Rhode Island,[1] from submitting to the electors of Rhode Island a proposed amendment to the Rhode Island Constitution. The amendment, if approved, would permit, in the Town of West

---

[1] While the sole original Defendant in this action was the Secretary of State, by agreement the Narragansett Indian Tribe ("the Tribe") and Harrah's West Warwick Investment Company, LLC ("Harrah's") have intervened as Defendants.

Warwick, a "resort casino . . . privately owned and privately operated by a business entity established pursuant to Rhode Island law by the Narragansett Indian Tribe and its chosen partner." According to the agreed statement of facts submitted for the purpose of resolving this motion, the parties have identified this chosen partner as Defendant Harrah's.  The precise terms of the agreement between the Tribe and Harrah's are not part of the record, nor necessary for disposition of this motion.  Because of the importance of this issue to the parties and the voters of Rhode Island, this Court consolidated Plaintiffs' Motion for Temporary Restraining Order with its Motion for a Preliminary Injunction pursuant to Fed. R. Civ. P. 65, set an expedited briefing schedule, and heard oral argument on August 7, 2006.  An immediate decision is necessary because the deadline for printing ballots and other election materials is August 9, 2006.

To summarize, Plaintiffs make three fundamental contentions in their Verified Complaint:  first, the proposed constitutional amendment, if approved, would violate the Equal Protection Clause of the Fourteenth Amendment to the federal Constitution by conferring a benefit upon the Tribe as a racial or ethnic group and upon Harrah's as a corporation; second, the proposed amendment would impermissibly confer a benefit upon Harrah's, West Warwick, and the Tribe as a reward for their advocacy of a casino in West Warwick, therefore punishing Plaintiffs for the content of their

opposing political speech and violating their fundamental right to freely engage in political speech; and finally, if the proposed amendment passes they will be "fenced out" of the legislative process in violation of their First Amendment right to participate equally and meaningfully in the political process.

Defendants have not yet filed a formal response to the Verified Complaint, but object to the motion for injunctive relief, contending primarily that the matter is not currently ripe for decision, and will not be ripe until after the November election. Defendants also argue that Plaintiffs' Equal Protection and First Amendment constitutional claims fall short and therefore Plaintiffs have failed to show a likelihood of success on the merits; and further, Plaintiffs have failed to show that they will suffer any irreparable harm if the ballot question is allowed to go forward.

After reviewing the excellent memoranda filed by the parties, listening to the arguments of counsel, and reviewing the authorities cited, this Court finds that while Plaintiffs and the Attorney General[2] have raised serious constitutional questions regarding the proposed constitutional amendment, the dispute is simply not yet ripe for adjudication. Moreover, even if it were appropriate for review at this time, Plaintiffs have failed to meet the high bar for preliminary injunctive relief.

---

[2] The Attorney General of Rhode Island, by permission of the Court, filed an amicus brief on behalf of Plaintiffs and was allowed to participate in oral argument.

Enjoining an election is one of the most drastic powers of equity within the arsenal of a federal district court. While this Court clearly has that power, prudence requires enormous discretion in its exercise. See Sw. Voter Registration Educ. Project v. Shelley, 344 F.3d 914, 918 (9th Cir. 2003) ("The decision to enjoin an impending election is so serious that the Supreme Court has allowed elections to go forward even in the face of an undisputed constitutional violation.") (citations omitted). The exercise of discretion is even more important where a potentially unconstitutional law is still inchoate. Ranjel v. City of Lansing, 417 F.2d 321, 325 (6th Cir. 1969) (reversing grant of preliminary injunction of referendum that allegedly violated the Fourteenth Amendment and holding that district court should rule on the validity of the measure only after it passes); O'Kelley v. Cox, 604 S.E.2d 773, 774 (Ga. 2004) (declining to enjoin the Secretary of State from putting proposed state constitutional amendment on the general election ballot because while "the judiciary is vested with the power to determine the constitutionality of legislation," at the pre-election stage, "there is simply no legislation which can be the subject of a constitutional attack"); Diaz v. Bd. of County Comm'rs of Dade County, 502 F. Supp. 190 (S.D. Fla. 1980) (declining to enjoin a referendum on ripeness grounds when plaintiffs claimed they would be damaged by the results of the referendum, not by the act of voting itself); State ex rel.

4

O'Connell v. Kramer, 73 Wash. 2d 85, 87 (Wash. 1968) ("we cannot pass on the constitutionality of proposed legislation, whether by bills introduced in the House or Senate, or measures proposed as initiatives, until the legislative process is complete and the bill or measure has been enacted into law"); City of Rocky Ford v. Brown, 133 Colo. 262, 265-266 (Colo. 1956) (en banc) (ordering city officials to go forward with referendum process because a ruling on the constitutionality of the referendum before the vote took place would constitute an advisory opinion).

This Court appreciates the gravity of Plaintiffs' claims, particularly their allegation that the proposed amendment violates the Fourteenth Amendment because it amounts to an unlawful racial or ethnic preference. However, the Court is not prepared to say without doubt that the proposed amendment is "patently" unconstitutional, see Otey v. Common Council of City of Milwaukee, 281 F. Supp. 264, 274-280 (E.D. Wis. 1968) (federal district court enjoined submission of resolution to the electorate because it "patently" violated the equal protection clause of the Fourteenth Amendment); see also Stumpf v. Lau, 108 Nev. 826, 830 (Nev. 1992) (preventing a constitutional ballot initiative from being voted on when it "clearly" and "palpably" violated the Constitution); nor is this case of such an "exceptional" nature as to warrant intervention before the election has yet come to pass, see Griffin v. Burns, 570 F.2d 1065, 1078-1079 (1st Cir. 1978) (upholding

district court order directing a new primary election because irregularities in absentee and shut-in ballots disenfranchised voters).

This conclusion is consistent with the prohibition against federal courts issuing advisory opinions. "Under Article III of the Constitution, '[t]he judicial Power shall extend' to 'Cases' and 'Controversies.' The Supreme Court has interpreted this 'case or controversy' requirement to mean, among other things, that federal courts do not issue advisory opinions." Igartua-De La Rosa v. United States, 417 F.3d 145, 153 (1st Cir. 2005) (Lipez, J., concurring) (citation omitted). This general prohibition against advisory opinions prevents courts from deciding "abstract, hypothetical, or contingent questions." Alabama State Fed'n of Labor v. McAdory, 325 U.S. 450, 461 (1945). Within the prohibition against advisory opinions lies the principle of strict necessity, the principle that federal courts should not adjudicate constitutional issues unless unavoidable. See State of New Hampshire Dep't of Employment Sec. v. Marshall, 616 F.2d 240, 249 (1st Cir. 1980) (citing Spector Motor Serv., Inc. v. McLaughlin, 323 U.S. 101, 105 (1944)) ("If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality . . . unless such adjudication is unavoidable."). This Court may never be called upon to rule on the

constitutionality of the proposed amendment: the electorate may vote it down in November.    Courts should not wade into constitutionally torrid waters unless doing so is unavoidable. That is not the case here.

Furthermore, even if the matter were deemed ripe enough for review, Plaintiffs have not satisfied their burden for preliminary injunctive relief.    Trial courts must consider the following conjunctive elements in determining whether to grant or deny a preliminary injunction:

> (1) the likelihood of success on the merits;
> (2) the potential for irreparable harm if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest.

Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 15 (1st Cir. 1996).  While it is probably true that Plaintiffs have demonstrated a likelihood of success on the merits for at least one claim — perhaps even a substantial likelihood of success — this Court is not persuaded of the potential for irreparable harm to Plaintiffs if the referendum question appears on the ballot.[3]

---

[3] Plaintiffs contend that the burden of showing irreparable harm may be lessened in some situations where the showing of likelihood of success is strong.  See EEOC v. Astra U.S.A., Inc., 94 F.3d 738, 743 (1st Cir. 1996).  While true, this principle must be balanced against the nature of the injunction requested.  That is, enjoining an election is much more than preserving the status quo.  It is, in effect, a judgment on the merits of the case because another statewide election will not be held for two years.

Plaintiffs' proffered rationales for injury do not hold water. For example, Ajax claims that without an injunction its ability to pursue its goal of a casino in Johnston will suffer a setback because an option on certain land will expire and it will lose a deposit. This makes little sense because even if the ballot question is enjoined that in no way guarantees Ajax success. Indeed, the opposite may be true: if this Court strikes the question from the ballot, then a year or more of litigation and appeals will ensue. If the voters reject the proposed constitutional amendment, however, there will be no need for litigation and Plaintiffs will be presumably better off.[4] The same can be said for the claim that voters will be unnecessarily misled by a pointless casino campaign: not true, because the vitality of the debate will doubtless cause the electorate to focus on the merits of having or not having casino gambling in Rhode Island. Whether or not the proposed amendment survives a vote of the electorate or judicial review if successful, the voting population will be better educated on the issues. And even if the amendment does not survive constitutional scrutiny, a differently worded question in the future may correct any infirmities and again

---

[4] Although not included in the parties' agreed statement of facts, counsel for Harrah's represented during oral argument that Plaintiffs' arrangement with an entity associated with Donald Trump already has lapsed, or soon will. Plaintiffs' counsel did not dispute this assertion on rebuttal.

proceed to the electorate. In all events, the debate will not have been for naught. In addition, the casino question may energize the electorate and increase voter turn-out — by all accounts a good thing in times of increased voter apathy. And, as to the argument that the proposed constitutional amendment violates the sanctity of the Constitution itself, again there is no _irreparable_ harm. Even if the measure passes in November, it must pass through the judicial gauntlet (this Court and the Court of Appeals) before it becomes a constitutional fixture. Moreover, none of the harms described by Plaintiffs outweigh the exceptional and significant effect that this Court's granting of the motion would have on the public's interest in voting on a widely-debated, proposed state constitutional amendment. Finally, public policy must be said to favor the democratic electoral process over the iron fist of federal judicial intervention in a state election to consider an amendment to a state constitution.

For the foregoing reasons, Plaintiffs' Motion for a Preliminary Injunction is DENIED.

IT IS SO ORDERED:

_____
William E. Smith
United States District Judge

Date: August 8, 2006.